UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY, and GEICO CASUALTY COMPANY,<br><br>*Plaintiffs*,<br><br>-against-<br><br>DIDIER DEMESMIN, M.D., NEW YORK PAIN MEDICINE ASSOCIATE, PLLC, UNIVERSITY PAIN MEDICINE CENTER, LLC, STEMMEE, LLC, TOTAL WELLNESS & MEDICAL HEALTH, P.C., DAVID G. KHANAN, M.D., MENDOZA CHIROPRACTIC OFFICE PC, and MANUEL A. MENDOZA, D.C.<br><br>*Defendants*. | 23-CV-6191 (ARR) (MMH)<br><br><u>NOT FOR ELECTRONIC<br>OR PRINT PUBLICATION</u><br><br>**OPINION & ORDER** |

ROSS, United States District Judge:

Plaintiffs, Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively "GEICO"), seek to enjoin defendants Manuel A. Mendoza, D.C. and Mendoza Chiropractic Office PC (collectively the "Mendoza Defendants") from pursuing certain "no-fault" insurance collection arbitrations or initiating new collections proceedings during the pendency of this lawsuit. For the reasons stated below, I grant GEICO's motion.

## BACKGROUND[1]

GEICO is an insurance company authorized to issue automobile insurance policies in New York and New Jersey. Second Amended Compl. ¶ 8 ("SAC"), ECF No. 8. Pursuant to New York

---

[1] Many of the underlying facts were detailed in my previous order. *See* ECF No. 49. I assume familiarity with those details and recount only those facts that are relevant to the motion before me.

and New Jersey law, GEICO provides personal injury protection benefits on a "no-fault" basis, which means that, after an accident, insured drivers and their passengers are entitled to certain benefits for medically necessary healthcare services regardless of who was at fault. *See* N.Y. Ins. Law §§ 5101–5109; N.Y. Comp. Codes R. & Regs. tit. 11, § 65 ("N.Y.C.R.R."); N.J. Stat. Ann. §§ 39:6A-1–35. Under this system, healthcare providers often bill a patient's insurer directly, after receiving an "assignment of benefits" from a patient they have treated. *See* 11 N.Y.C.R.R. § 65-3.11(b) (allowing for "direct payment from the insurer"). Under New York law, no-fault benefits are generally capped at $50,000 per person. *See* N.Y. Ins. Law § 5102(a). Under New Jersey law, insurers must provide a minimum amount of no-fault coverage that varies depending on the year the policy was issued. *See* N.J. Stat. Ann. § 39:6A-3..

GEICO brought this action against a group of healthcare providers who allegedly carried out an insurance scheme to obtain fraudulent no-fault benefit payments from GEICO. *See* First Amended Compl. ¶ 1 ("FAC"), ECF No. 8. GEICO's initial complaint concerned two groups of defendants—the "Demesmin defendants" and the "Khanan defendants"—who allegedly worked in coordination to make fraudulent referrals and misrepresent the nature of care they provided to patients. *Id*. ¶¶ 2, 5–7; Order Granting Pls.' Mot. Stay at 3 ("Stay Order"), ECF No. 49. At the time the case was filed, the Demesmin and Khanan defendants were actively pursuing collections in numerous arbitrations against GEICO. *See* Pls.' Mem. in Supp. Mot. Stay at 8, ECF No. 42. GEICO moved to stay the 204 pending arbitrations and enjoin the Demesmin and Khanan defendants from initiating new no-fault arbitrations or litigation during the pendency of the lawsuit. *Id*. at 1, 8. I granted the motion based on my conclusion that (1) GEICO would experience irreparable harm absent a stay, (2) GEICO raised a serious question going to the merits, and (3) the balance of hardships tipped in GEICO's favor. Stay Order at 6, 10.

2

Subsequently, GEICO requested leave to file a second amended complaint to add allegations concerning the Mendoza defendants, who were not named in the previous complaint. *See* Req. File SAC, ECF No. 60. According to GEICO, the Mendoza defendants' role in the insurance fraud scheme was revealed through information obtained through discovery. *Id*. at 1. I granted leave to amend, and GEICO filed a new complaint alleging, *inter alia*, that the Mendoza defendants participated in the insurance scheme by referring patients to the Demesmin defendants in exchange for kickbacks, SAC ¶¶ 82–98; by referring patients and billing GEICO for medically unnecessary services, *id*. ¶¶ 102–107, 281–95; and by misrepresenting both the severity of patients' symptoms and the nature of care they provided, *id*. ¶¶ 131–33, 144–54. In an appendix to the complaint, GEICO identifies more than 45,000 claims submitted by the Mendoza defendants that GEICO believes to be fraudulent. SAC, Ex. 5, ECF No. 72-6. In total, GEICO seeks recovery of more than $5.9 million in wrongfully obtained benefits payments from the three groups of defendants, as well as a declaration that it is not obligated to reimburse defendants for outstanding no-fault claims. *Id*. ¶ 1–3.

After filing the second amended complaint, GEICO filed the present motion seeking an order staying all pending no-fault benefits arbitrations between GEICO and the Mendoza defendants and enjoining the Mendoza defendants from commencing new collections proceedings during the pendency of this action. Pls.' Mot. for Prelim. Injunction, ECF No. 86. The Mendoza defendants are currently pursuing collection of more than $17,000 in benefits payments from GEICO in approximately nine different proceedings.[2] Decl. Kathleen Asmus ¶ 19 ("Asmus Decl."), ECF No. 86-2.

---

[2] There is some inconsistency in GEICO's assertions regarding the number of pending arbitrations involving the Mendoza defendants. In some places, GEICO asserts there are nine pending arbitrations, *see, e.g.*, Pls.' Mem. in Supp. of Prelim. Inj. at 8, ECF No. 86-1, and in other places

3

**DISCUSSION**

In this circuit, a motion to stay and enjoin no-fault insurance collection proceedings pending the disposition of a plaintiff-insurer's fraud and declaratory judgment action is evaluated under the preliminary injunction standard. *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 449 (E.D.N.Y. 2020). The insurer must therefore demonstrate "irreparable harm absent injunctive relief" and "either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor." *Id*. (quoting *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010)). GEICO has satisfied this standard with respect to collections proceedings brough by the Mendoza defendants.

**I.    GEICO will experience irreparable harm absent a stay.**

Irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003). As I explained in my previous order, the risk of inconsistent judgments in no-fault insurance disputes can constitute irreparable harm separate and apart from the expenditure of time and money spent on parallel proceedings. Stay Order at 4–6. *See Gov't Emps. Ins. Co. v. Tolmasov*, 602 F. Supp. 3d 380, 387–88 (E.D.N.Y. 2022); *State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, No. 21-CV-5523 (MKB), 2022 WL 1606523, at *17–18 (E.D.N.Y. May 20, 2022). Because res judicata generally applies to final decisions rendered in parallel state court proceedings, *see State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 229 (E.D.N.Y. 2018), and arbitration, *see Pike v. Freeman*, 266 F.3d 78, 90 (2d Cir. 2001), it is unclear whether

---

GEICO asserts there are seventeen, *id*. at 10. Because it is GEICO's burden to satisfy the requirements under the preliminary injunction standard, I assume for the purpose of the motion there are approximately nine arbitrations.

4

and to what extent an insurer can recover if it subsequently proves in federal court that the claim was part of an insurance fraud scheme. *See State Farm Mut. Auto. Ins. Co. v. Kotkes*, No. 22-CV-03611 (NRM) (RER), 2023 WL 4532460, at *9 (E.D.N.Y. July 13, 2023) (explaining how adverse state court judgments and arbitral awards can "deprive[] [an insurer] of the opportunity to litigate a substantial portion of its fraud complaint"); *Gov't Emps. Ins. Co. v. Q Pharmacy RX, Inc.*, No. 23-CV-9085 (ARR) (TAM), 2024 WL 3823491, at *3 (E.D.N.Y. Aug. 15, 2024) (same).

Here, GEICO has provided a sworn declaration stating that it is currently defending against the Mendoza defendants' efforts to collect benefits payments in at least nine separate arbitration proceedings. Asmus Decl. ¶ 19. It stands to reason that, absent a stay and injunction, the Mendoza defendants will win an arbitration award for at least one of the disputed claims without an opportunity for GEICO to show that the claim is part of a broader fraud scheme. *See Allstate Ins. Co. v. Mun*, 751 F.3d 94 (2d Cir. 2014) ("Complex fraud and RICO claims . . . cannot be shoehorned into [the no-fault arbitration] system." (citation omitted). If GEICO subsequently succeeds in proving fraud in *this* action, GEICO may be barred from recovering past arbitration awards and obtaining complete declaratory relief. *See Kotkes*, 2023 WL 4532460, at *9. This kind of interference with "the administration of justice" cannot be fully compensated through money damages. *Q Pharmacy RX*, 2024 WL 3823491, at *3. As with the parallel proceedings brought by the Demesmin and Khanan defendants, the risk of inconsistent outcomes here is great enough to establish irreparable harm. *See* Stay Order at 4.

The Mendoza defendants' counterarguments do not provide a persuasive basis for treating their collection efforts differently than I treated the collection efforts of their codefendants:

First, the Mendoza defendants argue that granting the stay and injunction conflicts with the Second Circuit's summary order in *Allstate Insurance Co. v. Harvey Family Chiropractic*, 677 F.

5

App'x 716 (2d Cir. 2017). Defs.' Opp. to Stay at 6–8, ECF No. 89. In that case, the Second Circuit concluded that the district court did not abuse its discretion in denying an insurer's request for a preliminary injunction because there was no evidence that the insurer could not be "fully compensated through money damages." *Harvey*, 667 F. App'x at 718. As I previously explained, *Harvey* does not address the risk of inconsistent judgments and, as such, is inapposite here. Stay Order at 5; *see also Gov't Emps. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 501–502 (E.D.N.Y. 2021).

Second, the Mendoza defendants argue that inconsistent judgments in *their* collections proceedings will inflict less harm because they are involved in comparatively fewer pending arbitrations than their codefendants. Defs.' Opp. at 9. This argument is unpersuasive because it does not account for the risk posed by new proceedings that are not currently pending. *See* Pls.' Reply in Supp. of Stay at 9, ECF No. 90 ("The Mendoza Defendants do not dispute . . . that they intend to place many more unpaid claims into collections through arbitration[.]"). Moreover, the Mendoza defendants' alleged misconduct cannot be isolated from the other defendants with whom they allegedly conspired to defraud GEICO. As such, I assess the risk of inconsistent outcomes posed by parallel proceedings in aggregate. Counted this way, GEICO faces the risk of inconsistent judgments in at least 213 separate arbitrations involving the same underlying scheme. *See* Asmus Decl. ¶ 19; Pls.' Mem. in Supp. Mot. Stay at 8, ECF No. 42.

Finally, the Mendoza defendants suggest that the Second Circuit is on the verge of clarifying that the risk of inconsistent judgments alone does *not* constitute irreparable harm. Defs.' Opp. at 7–8 (discussing *State Farm v. Metro Pain Specialists*, No. 22-1318 (argued Jan. 11, 2024)). The Second Circuit may, in the future, clarify the preliminary injunction standard in the context of cases involving no-fault insurance schemes. Unless and until it does so, however, I decline to cast

6

aside the consensus of "numerous district courts in this Circuit[.]" *Tolmasov*, 602 F. Supp. 3d at 288.

I accordingly conclude that GEICO has established irreparable harm because permitting arbitrations to proceed will subject it to a risk of judgments that may be inconsistent with future judicial rulings.

## II. GEICO has shown at least some serious questions going to the merits, and the balance of hardships tips in its favor.

In addition to irreparable harm, GEICO must also establish a "likelihood of success on the merits" or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor." *Tolmasov*, 602 F. Supp. 3d at 390 (quotation omitted). Here, GEICO has again satisfied the "serious questions" standard. *See* Stay Order at 8.

GEICO's amended complaint details a complex scheme of fraudulent billing and referrals among a network of chiropractic providers. *See* SAC ¶¶ 82–87; 170–79; 280–85. GEICO's allegations concerning the Mendoza defendants' role are well developed through numerous examples of charges billed without proper documentation or under suspicious circumstances, *id.* ¶¶ 151, 180, 187, 294, and a table of more than 45,000 suspect claims, SAC Ex. 5, ECF No. 72-6. As I previously explained, such allegations are enough to establish a serious question going to the merits. *See* Stay Order at 8–9.

The Mendoza defendants seek to refute GEICO's allegations by providing a handful of arbitration awards obtained against GEICO, in which an arbitrator concluded that GEICO "failed to meet its burden to establish a lack of medical necessity" for "treatment provided by Mendoza Chiro." Defs.' Ex. 1, Decl. Susan Schulman, ECF No. 89-1. Given the limited scope of each individual arbitration, however, this evidence does little to counter GEICO's allegations of

7

systemic fraud. *GEICO v. Beynin*, No. 19-CV-06118 (DG) (PK), 2021 WL 1146051, at *6 (E.D.N.Y. Mar. 25, 2021) ("[T]he Court agrees with Plaintiffs that the claims brought in this action cannot be meaningfully pursued in no-fault insurance proceedings."); *see also* Asmus Decl. at 5 (describing limits on discovery in no-fault insurance arbitration).

The balance of hardships also tips in GEICO's favor because the Mendoza defendants have not established any hardship, beyond a delay in reimbursement, that will result if their right to collect is adjudicated in this litigation, rather than individual arbitrations. *See Gov't Emps. Ins. Co. v. Barakat*, 709 F. Supp. 3d 93, 103 (E.D.N.Y. 2024). Because the defendants will presumably be entitled to collect interest on their pending claims if they prevail, *see Kotkes,* 2023 WL 4532460 at *11, the delay does not outweigh the risk of inconsistent outcomes faced by GEICO.

In their papers, the Mendoza defendants assert that an injunction will likely prevent them from "*ever* receiv[ing] payment for the medical services [they] provided" because patients' policies will be "exhausted" during the pendency of the litigation. Defs.' Opp. at 13. Specifically, they state that because most of GEICO's policies contain "insurance limit[s]" that are "quite low," they can be "exhausted very quickly." *Id*. The Mendoza defendants do not clearly explain the mechanism by which the policies will be exhausted, but I assume they are referring to the operation of statutory and contractual caps on no-fault recovery, s*ee, e.g.* N.Y. Ins. Law § 5102(a), rather than a temporal limit on recovery. Presumably, the Mendoza defendants fear that if they are enjoined from collecting reimbursement from GEICO during the pendency of this litigation, patients they have treated will also seek care from other providers, and those providers will exhaust the no-fault benefits limits before the stay and injunction are lifted.

In theory, I agree that a permanent foreclosure of a provider's opportunity to collect reimbursement for services rendered is a serious hardship. However, the Mendoza defendants have

8

not provided any evidence that coverage limits are likely to be triggered for any specific patient whose treatment is at issue in this case. *See Kotkes*, 2023 WL 4532460, at *11 (describing similar arguments as "hypothetical"); *Gov't Emps. Ins. Co. v. Moshe*, No. 120-CV-1098 (FB) (RER), 2020 WL 3503176, at *3 (E.D.N.Y. June 29, 2020) ("[T]his argument is speculative at best considering defendants do not identity any policies nearing exhaustion."). Nor do the Mendoza defendants indicate whether it is possible for me to craft an injunction that mitigates the alleged harm by preserving their ability to obtain reimbursement in the event they prevail. Without additional details concerning the likelihood of exhaustion and the operation of GEICO's policies, I am unable to credit the Mendoza defendants' characterization of the present motion as a "strong-arm[] tactic to try and get the Mendoza Defendants to resolve this case or risk losing the opportunity to collect on their outstanding bills." Defs.' Opp. at 1.

The Mendoza defendants are welcome to file a motion indicating how I might modify the scope of the injunction to protect their ability to pursue reimbursement if they prevail in this action. *See Batalla Vidad v. Mayorkas*, 618 F. Supp. 3d 119, 122 (E.D.N.Y. 2022) (discussing district court's "broad" and "inherent" authority to modify an injunction). For the time being, however, I conclude that the balance of harm tips decidedly in GEICO's favor.

### III.   A stay does not violate the Anti-Injunction Act.

The Anti-Injunction Act ("AIA") prohibits federal courts from enjoining proceedings in state court "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The AIA does not," however, "limit the court's authority to enjoin ongoing private arbitration proceedings or the court's authority to enjoin defendants from initiating future [state court] proceedings." *Mahmood*, 2024 WL 113958, at *5.

9

Here, GEICO seeks a stay of pending arbitrations and an injunction concerning future litigation that has not yet been filed. *See* Pls.' Reply at 13–14; Pls.' Proposed Order, ECF No. 86-3. As such, the AIA has no bearing on my decision.

### IV. GEICO is not required to post security.

Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." As I have previously explained, a plaintiff-insurer need not post security where, as here, there is no question that they will be able to pay if the defendants prevail. *See* Stay Order at 10. The bond requirement is therefore waived.

### CONCLUSION

For the foregoing reasons, GEICO's motion is GRANTED, and a preliminary injunction is issued (i) staying all pending no-fault insurance collection arbitrations that have been commenced against GEICO by or on behalf of the Mendoza defendants, pending the disposition of GEICO's claims in this action, and (ii) enjoining the Mendoza defendants and anyone acting on their behalf from commencing new no-fault arbitrations and litigations against GEICO pending the disposition of GEICO's claims in this action.

SO ORDERED.

                                                    /s/
                                                    Allyne R. Ross
                                                    United States District Judge

Dated:        October 23, 2024
                Brooklyn, New York